HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN AND MICHELLE MARTS,

               Plaintiffs,

     v.

U.S. BANK NATIONAL
ASSOCIATION, et al.,

               Defendants.

CASE NO. C15-198 RAJ

ORDER

## I.    INTRODUCTION

This matter comes before the court on defendants' motion for summary judgment. Dkt. # 10.  Defendants are U.S. Bank National Association ("USB") and Mortgage Electric Registration Systems, Inc. ("MERS").  For the reasons stated below, the motion is GRANTED.

In their complaint, plaintiffs John and Michelle Marts seek: (1) damages arising out of the attempted foreclosure of their home and (2) an injunction restraining a trustee

sale.[1]  (Compl.) Dkt. #1-2.  The complaint alleges that defendants violated the Washington Consumer Protection Act (Counts I-V: CPA Claims) and breached the parties' agreement (Count VI: Breach of Contract).  *Id.*  In their response to defendants' motion, plaintiffs concede that Count I is not a viable claim and fail to make any argument opposing dismissal of Count VI -- their contract claim.  (Opp.) Dkt. # 14, p. 2. Plaintiffs further state that they have no intention of seeking to enjoin foreclosure.  *Id.*, p. 4 n.3.  Accordingly, the only remaining claims at issue are Counts II-V, all of which allege violations of the CPA.

## II.    BACKGROUND

On April 25, 2007, plaintiffs refinanced the loan on their residence at Lake Stevens, Washington (the "Property") for $411,200.00, as evidenced by a 30-year adjustable rate promissory note (the "Note") payable to Flexpoint Funding Corporation ("Flexpoint").  Declaration of Joseph G. Devine, Jr. ("Devine Decl."), Ex. C (Note).  The Note was secured by a deed of trust (the "Deed of Trust"), which provided that upon loan default, the note holder could sell plaintiffs' property to recover the loan proceeds.  *Id.*, Ex. D.  Flexpoint was listed as the lender and MERS was listed as the nominee for Flexpoint and its successors and assigns on the Deed of Trust.  *Id.* at 1-2.

Before closing, EMC Mortgage Corp. ("EMC") committed to funding and then purchasing plaintiffs' loan from Flexpoint.  *Id.*, Ex. E.  To allow for the transfer to EMC, defendants contend that an Allonge -- a paper used to attach an endorsement in blank -- was affixed to the Note.  *See Id.*, Ex. G; Ex. H.  Plaintiffs dispute this fact and contend that additional discovery is necessary to determine whether the Allonge was indeed attached to the Note.  (Opp.) Dkt. # 14, p. 13.

---

[1] Plaintiffs later claimed that their requested injunctive relief was a word processing error. *See* (Opp.) Dkt. # 14, p. 4 n.3.

Review of the document itself reveals that it is titled "Allonge to Note," identifies John and Michelle Marts as the borrowers and accurately states the property address and the loan amount.  Devine Decl., Ex. C.  The Allonge is dated April 25, 2007 (the same day as the closing) and is signed by Aldo Marroquin, Vice President of Funding for Flexpoint.  *Id.*  Inclusion of the Allonge with the loan file was a necessary precondition to closing.  *See Id.*, Ex. H (cover page for closing instructions includes check-boxes for all loan documents and the "allonge" box is checked); *id.*, Ex. G (identifying the allonge in the Collateral Stacking Order).

On May 7, 2007, EMC deposited the Note into the Bear Stearns Asset Backed Certificates Series 2007-HE6 Trust (the "Bear Stearns Trust").  EMC continued to act as the loan servicer.  *See* Devine Decl. ¶ 13 & Ex. J; *id.* ¶ 14, Ex. K (identifying Bear Stearns as the investor); *id.* ¶ 15, Ex. L (original loan documents identify EMC Mortgage as servicer as of June 1, 2007).  J.P. Morgan Chase Bank, N.A. ("Chase") later became the loan servicer.  (Opp.) Dkt. # 14, p. 5.

To summarize, Flexpoint was the initial "owner" of the Note.  Flexpoint then transferred the Note to EMC and EMC transferred it to the Bear Stearns Trust.  All of this occurred in 2007.  Thus, since 2007 the Bear Stearns Trust has been the "owner" of the Note and defendant USB, as trustee of the Bear Stearns Trust, has been the "holder" of the Note.  *See* Devine Decl. ¶ 17 & Ex. N.  Throughout this period, EMC, and later, Chase acted as the loan servicers, i.e., the parties responsible for day-to-day interaction with plaintiffs.  (Opp.) Dkt. # 14, p. 5.

Plaintiffs do not dispute that they defaulted on their Note.  Declaration of Fred B. Burnside ("Burnside Decl.") ¶ 2, Ex. A (Transcript of Mr. John Marts' Deposition ("Marts Dep.") at 19:14-19); *see also* Burnside Decl. ¶ 3, Ex. B (Answers to Requests for Admissions) at No. 5 (admitting default) and No. 7 admitting Plaintiffs have made no monthly mortgage payments towards the principal of the loan since September 1, 2007).  Plaintiffs also do not dispute that they knew at all times where to submit payments and

1  whom to contact regarding loan modifications.  Marts Dep. at 48: 17-25; 50: 18-23;
2  80:18-81:2.

3      USB has attempted to foreclose on plaintiffs' property a number of times,
4  beginning in 2007.  *See* Dkt. # 16-2, pp. 2, 9, 16, 23, 38 (notices of trustee sale).  In 2008,
5  plaintiffs filed for bankruptcy, which forestalled the foreclosure of their home.  Burnside
6  Decl., Ex. C (voluntary petition).  On April 15, 2015, the bankruptcy court approved a
7  settlement of all of plaintiff's pre-petition claims for $5,000.  Burnside Supp. Decl., Ex.
8  A.  Although no trustee sale is currently pending, defendants assert that plaintiffs "have
9  not brought their loan current (or made any overtures to pay their loan balance or modify
10 their loan)" and thus foreclosure proceedings "could resume at any point."  Dkt. # 27, p.6.

11     Plaintiffs contend that defendants engaged in two deceptive practices that violate
12 the CPA: (1) USB and MERS "engaged in a scheme to create a private property
13 recording system" that served to "obscure any ability of the Marts to determine who
14 actually *owned* their loan and had the right to foreclose" and (2) USB and MERS initiated
15 foreclosures against the Marts before perfecting an interest in the note (presumably based
16 on plaintiffs' theory that the Note and Allonge were not affixed to each other).  *See, e.g.*,
17 (Opp.) Dkt. # 14, p. 2; *see also* (Compl.) Dkt. # 1-2, ¶ 27 ("[T]he note and allonge were
18 subsequently transferred separately to US Bank and never affixed to each other until
19 sometime after December 21, 2012.").

20     Plaintiffs contend that these practices injured them in two ways: (1) they "incurred
21 costs associated with investigating ownership of their note," to determine "the party
22 entitled to enforce the note secured by their residence," and (2) Ms. Marts suffered
23 significant emotional distress.  *Id.*, p. 13.

24 **III.    ANALYSIS**

25     **a.  Legal Standard**

26     Summary judgment is appropriate if there is no genuine dispute as to any material
27 fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

### b.  CPA Claim

Plaintiffs' only remaining claims allege a violation of the CPA.  *See* (Compl.) Dkt. # 1-2.  Plaintiffs bear the burden of proof at trial on this claim.  Accordingly, plaintiffs must show: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) impacting the public interest; (4) injuring plaintiffs' business or property; and (5) caused by defendants' unfair or deceptive act.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 780 (1986).  "Failure to satisfy even one of the elements is fatal to a CPA claim."  *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298 (2002).

### i.  Injury and Causation

Here, defendants are moving for summary judgment and therefore it is their burden to demonstrate that there is an absence of evidence to support one or more elements of plaintiffs' claim.  *Celotex Corp.*, 477 U.S. at 325.  They have met that burden.  There is simply no evidence in the record that supports the fifth element of

plaintiffs' claim, i.e., that plaintiffs' injury was *caused* by the unfair or deceptive acts of defendants.

To prove causation, the "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash. 2d 59, 84 (2007). Here, plaintiffs admit that they stopped making payments on their loan.  Marts Dep. at 19:14-19) ("Q. And you stopped making payments on this loan approximately September of 2007. Is that right?, A. Yes.; Q. So you would agree with me that you're in default on this loan? A. Yes."); *see also* Burnside Decl., Ex. B (Answers to Requests for Admissions) at No. 5 (admitting default) and No. 7 admitting Plaintiffs have made no monthly mortgage payments towards the principal of the loan since September 1, 2007). The record does not contain a declaration from the Marts stating that but for their alleged confusion regarding who owned their Note, they would have brought their loan current.

Nor is there any evidence that plaintiffs incurred costs bargaining with the wrong entity.  They knew whom to submit their loan payments to and whom to contact to apply for a loan modification.  They just did not like the answers they were receiving.  *See id.* at 48: 17-25 ("Q. So you knew whom to speak with about applying for a loan modification, correct? A. Yes."); 80:18-81:2 ("So if – you applied for loan modification with EMC, right? A. Yes.; Q. And you were denied, right? A. Yes.; Q. And then when Chase took over servicing you applied again with them, right? A. Yes.; Q. And you were denied there again, right? A. Yes.").

Further, plaintiffs' own admissions establish that they incurred "investigation costs" in an effort to forestall foreclosure, rather than to dispel any uncertainty regarding the holder of their note.  *See* Marts Dep. 56:18-21; 57:1-4.  Indeed, there was no basis to incur such costs in 2012 (Opp. Dkt. # 14, p. 14), when plaintiffs knew or should have known as of 2009 that USB held the note on behalf of the Bear Stearns Trust. *See* Marts

Dep. at 41:6-9 (Q. So this document disclosed to you in 2009 that this trust owned your loan and that the trustee of the trust held your note, correct? A. Yes.)

Accordingly, plaintiffs have failed to demonstrate any issue of fact regarding causation of their injuries, all of which appear to be self-inflicted. *See, e.g., Babrauskas v. Paramount Equity Mortgage*, 2013 WL 5743903, *4 (W.D. Wash. Oct. 23, 2013) (finding no injury under the CPA because "plaintiff's failure to meet his debt obligations is the 'but for' cause of the default, the threat of foreclosure, any adverse impact on his credit, and the clouded title"); *McCrorey v. Fed. Nat. Mortg. Ass'n*, 2013 WL 681208 (W.D. Wash. Feb. 25, 2013) (finding no injury under the CPA because "it was [plaintiffs'] failure to meet their debt obligations that led to a default, the destruction of credit, and the foreclosure"); *Peterson v. Citibank, N.A.*, 2012 WL 4055809 (Wash. Ct. App. 2012) ("[R]egardless of MERS' conduct as the beneficiary under the deed of trust, the Petersons' property would still have been foreclosed upon based on their failure to make payments on the loan.").

Finally, Ms. Marts' emotional distress damages are not compensable under the CPA. *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27 (2009) ("Personal injuries, as opposed to injuries to 'business or property' are not compensable and do not satisfy the injury requirement.").

### ii.  Deceptive Act

Although the court need not address any of the remaining elements of plaintiffs' CPA claim, it is worth noting that plaintiffs have failed to show a disputed issue regarding defendants' alleged unfair or deceptive acts.

Plaintiffs contend that defendants participated in a scheme to create a private property recording system that obscured plaintiffs' ability to determine who actually owned their Note. As the Washington Supreme Court recently explained, separation of note ownership from the note holder is now commonplace. *Brown v. Wash. State Dep't of Commerce*, 184 Wash. 2d 509, 522-28 (2015). The note owner is entitled to the

ultimate economic benefit of payments on the note. *Id.* at 523. Thus, monthly payments on the note and/or the proceeds of a foreclosure sale flow to the note owner. The note holder, however, is the beneficiary and the entity with legal authority to enforce the obligation, foreclose, negotiate modifications, etc. *Id.* at 522-28. The note owner and the note holder can be the same entity, but they can also be different entities. *Id.* at 524.

In this case they are different entities – since 2007, the Bear Stearns Trust has been the note owner and USB has been the note holder. Plaintiffs have been aware of this fact (or should have been aware) since at least 2009. *See* Marts Dep. at 41:6-9 (Q. So this document disclosed to you in 2009 that this trust owned your loan and that the trustee of the trust held your note, correct? A. Yes.). Additionally, plaintiffs admit that they always knew the identity of their loan servicer, whom to submit payments to and whom to contact regarding loan modification. *See* Marts Dep. at 48: 17-25; 80:18-81:2. Thus, there was no need to investigate who owned their Note; they could have discharged their obligations through the servicer. *See, e.g.*, *Brown*, 184 Wash. 2d at 523 ("Freddie Mac owns Brown's note. At the same time, a servicer, M & T Bank, holds the note and is entitled to enforce it."); *id.* at 527 ("[T]he borrower owes and discharges his or her obligation to the [person entitled to enforce it]. The [person entitled to enforce the note] enforces and modifies the note."); *id.* at 537-543 (finding that borrowers have no need to investigate note ownership because only holder status is relevant).

Plaintiffs further contend that defendants engaged in a deceptive act by initiating foreclosure before perfecting an interest in the Note. According to plaintiffs, there is reason to doubt whether the Allonge was ever affixed to the Note because of some unidentified discrepancy in staple holes. (Opp.) Dkt. # 14, p. 13 ("[T]he top left hand corner of the note contained numerous staple holes indicating that it had been stapled and unstapled numerous times."). However, plaintiffs have offered no evidence to support this speculation. *Sw. Resolution v. Watson*, 964 S.W.2d 262, 264 (Tex. 1998) (recognizing that "staple hole" conspiracy theories are "pure conjecture" and one "cannot

infer that two documents were never attached from the fact that they can be, and have bee, detached.").

Moreover, even if plaintiffs could submit some evidence in support of this theory, they have failed to cite any law that would invalidate defendants' security interest on that basis.  Indeed, other courts have found, based upon a review of the facts and circumstances, that evidence of *intent* to affix the allonge to the note is sufficient to establish a valid endorsement.  *See, e.g.*, *See Wane v. Loan Corp.*, 552 F. App'x 908, 914 (11th Cir. 2014) (finding that the allonge was affixed because the allonge itself purported to be affixed to the note); *DZ Bank AG Deutsche Zentral–Genossenschaftsbank v. McCranie*, 2015 WL 5234569, at *13 (M.D. Fla. Sept. 8, 2015) (holding that the allonge was a proper endorsement on the note because it was part of the loan file and contained the loan information evidencing the parties' intent to have the documents attached); *Livonia Prop. Holdings, L.L.C. v. 12840–12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 734 (E.D. Mich. 2010) (holding that the allonges were sufficiently attached to the note because each allonge stated that it was either attached to or part of the promissory note); I*n re Nash*, 49 B.R. 254, 261 (Bankr. D. Ariz.1985) (holding that the allonge was valid because the allonge referenced the escrow number, identified the maker of the note and the date, and recited that the note was to be attached to the allonge); *Kohler v. U.S. Bank Nat'l Ass'n*, 2013 WL 3179557 (E.D. Wis. 2013) (explaining that, even if the allonges had not been physically attached to the note, the information on the allonge established that the parties intended for the allonges to be affixed).

Here, the Allonge is titled "Allonge *to Note*," identifies John and Michelle Marts as the borrowers and accurately states the property address and the loan amount.  Devine Decl., Ex. C.  The Allonge is dated April 25, 2007 (the same day as the closing) and is signed by Aldo Marroquin, Vice President of Funding for Flexpoint.  *Id.*  Inclusion of the Allonge with the loan file was a necessary precondition to closing.  *See Id.*, Ex. H (cover

1  page for closing instructions includes check-boxes for all loan documents and the
2  "allonge" box is checked); *id.*, Ex. G (identifying the allonge in the Collateral Stacking
3  Order).  In response, plaintiffs identify no material issues of disputed fact regarding the
4  parties' intent to affix the Allonge, but rather offer mere conjecture regarding staple
5  holes.

6      Accordingly, plaintiffs have failed to produce sufficient evidence to permit a jury
7  to reasonably find in their favor and summary judgment is appropriate.

8  **IV.    CONCLUSION**

9      For all of the foregoing reasons, the court GRANTS defendants' motion for
10  summary judgment. Dkt. # 10.  The clerk is directed to terminate all pending motions
11  and enter judgment in favor of defendants and against plaintiffs.

12      Dated this 26th day of February, 2016.

13
14  _____
15  The Honorable Richard A. Jones
     United States District Court
16
17
18
19
20
21
22
23
24
25
26
27

ORDER- 10